IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| LANCE SHOCKLEY, <br>    *Appellant*, <br><br> v. <br><br> RICHARD ADAMS <br> Warden, <br> Eastern Reception and <br>  Diagnostic Correctional Center; <br><br> HEATHER COFER <br> Warden, <br> Potosi Correctional Center; <br><br> MYLES STRID <br> Director, <br>  Division of Adult Institutions; <br><br> TREVOR FOLEY, <br> Director, Missouri <br> Department of Corrections, <br>  *Appellees*. | Case No. 25-3024 <br><br> DEATH PENALTY CASE <br> EXECUTION SCHEDULED <br> OCTOBER 14, 2025, 6:00 PM CST |

### APPELLANT LANCE SHOCKLEY'S REPLY
### IN SUPPORT OF HIS MOTION FOR STAY OF EXECUTION

This matter is before this Court because the State of Missouri has failed to follow its own policies – policies that specifically allow family members to serve as spiritual advisors (R. Doc. 2, Ex. A) – and refused to adhere to the Supreme Court's unambiguous holding in *Ramirez v. Collier*, 595 U.S. 411 (2022), that rejects the Missouri Department of Corrections ("MODOC") speculative concerns regarding the potential safety risks. Mr. Shockley has not sought a stay for the purpose of staying the execution.

1

Instead, he sought injunctive relief seeking the court to order MODOC abide by its own policies and respect his free expression of religion as he is executed by the State of Missouri. Both the record and the law firmly support Mr. Shockley's request for relief.

## ARGUMENT

Appellees raise several arguments in opposition to Mr. Shockley's motion for stay of execution that require a response. First, they argue the decision to deny Mr. Shockley his chosen spiritual advisor does not impose a substantial burden on his religious practice. Resp. at 11. Second, they argue their denial of his chosen spiritual advisor is narrowly tailored. Resp. at 14. Third, they argue this Court's decision should be guided by a footnote from *Bucklew v. Precythe,* 587 U.S. 119 (2019). Resp. at 1. Finally, they argue Mr. Shockley has engaged in inequitable delay in bringing this claim. Resp at 21. These arguments are not unpersuasive and undermined by the record before this Court.

**1. Mr. Shockley is likely to prevail on his RLUIPA claim.**

Mr. Shockley's request for accommodations are entirely consistent with the Supreme Court's well-reasoned opinion in *Ramirez* and an application of MODOC's long-standing spiritual advisor policies. R. Doc. 2, Ex. A. MODOC attempts to characterize Mr. Shockley's requests as far afield of the *Ramirez* holding. Resp. at pp. 11-12. Mr. Shockley requested his spiritual advisor according to MODOC policies, R. Doc. 2, Ex. A, and requested his chosen spiritual advisor be afforded the same

accommodations as previous advisors. R. Doc. 15, Ex. B. These accommodations included the ability to offer communion in person, the use of anointing oils, and to have his spiritual advisor present in the execution chamber as he passes to the afterlife. *Id.* Mr. Shockley referred to the MODOC spiritual advisor policy and his spiritual advisors filed the appropriate paperwork evidencing their qualifications under the current MODOC policies. R. Doc. 2, Exs. B, C, H, and I. MODOC rejected their applications based on their status as "family" members and, in a later explanation, that they were rejected based on the background portion of the approval process. R. Doc. 2, Ex. D at 2, Ex. Q, and Ex. R.

MODOC's refusal to approve Mr. Shockley's chosen spiritual advisors solely because of their status as "family" poses a significant burden on Mr. Shockley's religious free exercise. As the district court acknowledged, "that ministers are not fungible." R. Doc. 26, at 14. Nevertheless, MODOC's refusal to follow its own policies treats the choice of a spiritual advisor as fungible solely based on their status as a family member. R. Doc. 2, Ex. D at 2, Ex. Q, and Ex. R. MODOC insists it will approve the choice of another spiritual advisor – while relying on the very same policy (MODOC Policy D5-3.3) they refuse to honor in the instant litigation – as long as that advisor is not a family member. MODOC offers no coherent explanation why they won't follow their long-standing spiritual advisor policy. Indeed, they make no mention of the policy in their briefing and instead insist this Court should defer to their long-standing policy choices developed by correctional officials. Resp. at pp. 15-16. On this we can agree, MODOC

3

should abide by its policies and procedures approving Mr. Shockley's qualified spiritual advisors.

### 2. MODOC's restrictions are inconsistent with their own stated policies and overly restrictive in practice.

MODOC alleges their restrictions are narrowly tailored to protect important governmental interests, but their current position is at odd with their own policies that specifically contemplate family members serving in the role of spiritual advisor. R. Doc. 2, Ex. A. MODOC repeatedly references their execution policies that restrict visits with family members to non-contact visits once an execution is scheduled. Resp. at 15. MODOC's relies on its spiritual advisor policy to verify the qualifications of all potential spiritual advisors, including those that are family members of the inmate. R. Doc. 2, Ex. A. The policy applies to family members by its plain terms and MODOC officials have referred to this policy in their correspondence with Mr. Shockley and his chosen spiritual advisors. R. Doc. 2, Ex. Q. This policy was adopted in 2016 and has not changed even though the Supreme Court in *Ramirez* specifically encouraged States to adopt policies and procedures intended to address issues related to spiritual advisors in the execution chambers. 595 U.S. at 436 ("If States adopt clear rules in advance, it should be the rare case that requires last-minute resort to the federal courts.") Mr. Shockley relied on this long-standing policy in making his requests and the MODOC has refused to abide by the letter of its own policies.

Notably, the State doesn't follow this speculative accusation to its conclusion: if Morgan Shockley were to attempt to tamper with the execution she would be interrupted by the execution team standing by outside the chamber, arrested, and the execution of her father would continue. There is no scenario where Morgan saves her father's life once he is in the chamber. Considering this logical conclusion, it is unlikely that any of the safety concerns the State offer require a categorical ban to defend against. Instead, it is more than likely that Morgan, a missionary and ordained minister, is going to carry out her solemn duty to usher her father to the Kingdom of Heaven.

MODOC's objections to following its own policies are grounded on unfounded speculation and without support in the record. The district court held, "No evidence in the record suggests that Shockley's daughters would be disruptive if permitted in the execution room." R. Doc. 26, at 4. Indeed, the State raises host of theoretical problems that might arise with a spiritual advisor present in the execution chamber. Resp. at 14. The State of Texas made similar arguments in *Ramirez* and the Court acknowledged the potential issues. 595 U.S. at 430 ("We agree that the government has a compelling interest in preventing disruptions of any sort and maintaining solemnity and decorum in the execution chamber.") But the Court looked to the specific circumstances of having Ramirez's chosen spiritual advisor in the execution chamber and noted, "But there is no indication in the record that Pastor Moore would cause the sorts of disruptions that Appellees fear. Appellees' argument thus comes down to conjecture

5

regarding what a hypothetical spiritual advisor might do in some future case." *Id.* The same test should be applied to the circumstances of this case.

### 3. The State's continued reliance on *Bucklew v. Precythe* is mistaken.

The State relied heavily on *Bucklew v. Precythe,* 87 U.S. 119, 150 (2019), in its opposition to Mr. Shockley's Motion for Preliminary Injunction and Motion to Dismiss to persuade the District Court that the Supreme Court had already weighed in on the issue of family members in the death chamber. R. Doc. 15, at 3, 8; Doc. 16, at 4. Interestingly, the District Court did not address or adopt this argument in any way, only citing *Bucklew* for its actual holdings. *See* R. Doc. 26, at 16. If Supreme Court precedent truly decided this issue, that family members were "obviously" not permitted in an execution chamber, the District Court would have used this proposition to deny Mr. Shockley's injunction request.

Despite the District Court not biting on the State's strained reading of a footnote in *Bucklew,* the State relies on it again in this Court. To be sure, the Supreme Court has made no findings on whether a family member can ever be in an execution chamber. *Bucklew* didn't consider the possibility of a clergy-family member, and neither did the Alabama statute the footnote references. But Missouri affirmatively contemplated this crossover and provided for it in its Department policies. *Bucklew* did not feature a Department of Corrections like MODOC that expressly provides for the opportunity to be the spiritual advisor of an immediate family member-inmate.

6

Finally, the State misapprehends the import of the footnote in *Bucklew*. The footnote issue addresses the timing for petitioner to bring a claim and when he or she was on notice of the potential constitutional violation. 587 U.S. at 119, n5. The court in Bucklew was only addressing whether he delayed in bringing his constitutional claim too late in the process. The offhand comment from the court majority regarding the Alabama statute covering individuals that may be present during an execution is a little more than dicta and not controlling in light of the Supreme Court's decision in *Ramirez*. *Ramirez* was decided three years after *Bucklew* and directly addressed the constitutional issues at stake in this case. Any attempt by Appellees to rewrite the footnote at Supreme Court precedent should be ignored. The existence of a family member-spiritual advisor is novel in this Court and for the Supreme Court.

**4. There was no undue delay in filing this action.**

Appellees take issue with potential delay in Shockley's case on this issue and claim that – somehow – this particular part is about seeking delay in his execution. But Shockley has not delayed his claims. And Appellees fail to acknowledge what was taking place between them and Mr. Shockley's counsel from the moment Assistant Attorney General Michael Spillane communicated Morgan and Summer's denials. The two parties' counsels exchanged emails attempting to come to an agreement *to avoid litigation*. It would have been counterintuitive to both parties' goals for Mr. Shockley to file litigation while Appellees were still attempting to resolve his request. Appellees cannot

7

both engage in meaningful negotiations and also claim Mr. Shockley filed this litigation at the last minute to ensure delay.

Mr. Shockley's attempt to resolve his spiritual advisor issues started before his daughters' denials. Appellees overlook counsel's September 11, 2025, e-mail as one example, where counsel informed Appellees that "Mr. Shockley made two separate spiritual advisor requests in the past few months and both have been denied." Additionally, at the time of those requests, both daughters are ordained in the church and had the requisite support for their applications from Missouri churches as per the MODOC guidelines. And counsel also raised the issue in early September, over a month ago, with Appellees as well.

Shockley was only provided a witness designation sheet on Friday, September 26. R. Doc. 15, Ex. B at 10. That would have been his first opportunity to designate his chosen spiritual advisors once he arrived at Bonne Terre, MO, for the execution. Counsel followed back up with Appellees after not receiving a response. R. Doc. 15, Ex. B at 16.

According to Appellee, Shockley's suit is not about spiritual advisor but instead an attempt to delay his execution. Resp. at 21. The allegations of delay stand in direct contrast to the timeline offered in Shockley's opening brief before this Court. App. at 8-15. Lance's daughters applied to be spiritual advisors and were informed by prison officials they meet the qualifications to serve in that capacity. The Appellee's attempt to use delay in this matter is an attempt to distract this court's attention away from the

8

fact that MODOC denied Shockley's request for reasons that are (1) in direct conflict of their own policy and (2) based on pure conjecture in regard to security concerns.

Shockley's ultimate goal is not delay—it is, quite plainly, the ability to have his chosen spiritual advisors with him before and as he dies. This is clear from the legal posture of his request: Mr. Shockley asked the District Court for an injunction to force the State to stop violating his religious rights, *not* a permanent stay of execution. If Mr. Shockley is to be executed, he simply wants it done in accordance with his person religious beliefs. Neither Appellees nor the District Court question the authenticity of Shockley's faith, as they cannot. *See Ramirez*, 595 U.S. at 425.

Thus, contrary to Appellees' insistence and despite their incomplete recounting of the timeline, Shockley raised this issue well in advance of his execution. Appellees dragged their feet, and the filings now are as a result of their lack of action, not Shockley's.

## Conclusion and Prayer for Relief

Given the importance of the issues in this case, Mr. Shockley respectfully requests that this Court issue a stay of Mr. Shockley's execution, currently scheduled for October 14, 2025.

Respectfully submitted,
*/s/ Jeremy S. Weis*
Jeremy S. Weis, MO Bar No. 51514
Capital Habeas Unit
Federal Public Defender
Western District of Missouri

9

1000 Walnut St., Ste. 600
Kansas City, MO 64106
(816) 675-0923
E: Jeremy_Weis@FD.org

/s/ *Justin Thompson*
JUSTIN THOMPSON
OH Bar # 0078817
Federal Public Defender,
Southern District of Ohio
10W. Broad Street, Ste 1020
Columbus, Ohio 43215
(614)-469-2999
Justin_Thompson@fd.org

10

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document contains 2,123 words and is within the word limit of Fed. R. App. P. 27(d)(2)(A). 2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 and 14-point Garamond font.

/s/ Jeremy S. Weis
Jeremy S. Weis
Attorney for Lance Shockley

# CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2025, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system and sent it via email to Gregory Goodwin, Office of Missouri Attorney General, at gregory.goodwin@ago.mo.gov.

/s/ Jeremy S. Weis
Jeremy S. Weis
Attorney for Lance Shockley